USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/03/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHIRLEY DIMPS,

                         Plaintiff,

   -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION (DOCCS)

                        Defendant.

No. 17-CV-08806 (NSR)

**OPINION & ORDER**

---

NELSON S. ROMÁN, United States District Judge:

       Shirley Dimps ("Plaintiff"), proceeding *pro se*, asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") alleging that the New York State Department of Corrections and Community Supervision ("DOCCS") racially discriminated and unlawfully retaliated against Plaintiff, and created a hostile work environment. (*See* Second Amended Complaint ("SAC"), ECF No. 96).

       Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant moved to partially dismiss the SAC (ECF No. 114). For the following reasons, Defendant's Motion is GRANTED.

## BACKGROUND

       The following facts are drawn from Plaintiff's SAC and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I.     Facts

       Plaintiff, who is African American, began working at Taconic Correctional Facility ("Taconic") in July 2005 and retired in 2020. (*Id.* at ¶¶ 1, 6, 109). Plaintiff started at Taconic

Correctional Facility ("Taconic") as a Clerk 1, Grade 6. (*Id*. ¶ 6). Plaintiff "sought to be promoted throughout" her tenure at Taconic, but alleges that, "[d]espite [her] work background, college degree, and performance on the Civil Service Examinations, Taconic passed over [her], blocked, and denied her promotional opportunities on numerous occasions." (*Id*. at ¶¶ 14, 22). Specifically, Plaintiff alleges that she was passed over for promotions awarded to "equally or less-qualified candidates of other races." (*Id* at ¶ 23). She also notes that she took and passed "at least three Civil Service examinations between 2005 and 2016, seeking promotion opportunities," and "at one point was on four different Civil Service Eligible Lists," used in promotion decisions. (*Id.* at ¶¶ 18-19). Plaintiff asserts she was denied the following positions: Office Assistant 2 (Store Mail), Office Assistant 2 (Calculations), Secretary 1, Agency Program Aide at the Bedford Hills Correctional Facility, Office Assistant 3 (Provisional), and Offender Rehabilitation Aide.[1] (*Id.* at ¶¶ 27-65, 67-95). In all but two instances, a white or South Asian employee was selected over Plaintiff. (*Id.* at ¶¶ 37-39, 46-47, 54, 60).[2] Plaintiff also references a "[q]uestionable appointment" but it is not clear from the SAC whether Plaintiff applied for the position in question. (*Id*. ¶ 66).

Plaintiff also alleges that African Americans are not promoted at the same rate as white and South Asian employees, with those latter two categories "fill[ing] most of the higher grade positions." (*Id*. ¶ 92). According to Plaintiff, "only one position of higher grade was filled by an African American . . ." as of October 16, 2016, with the rest filled by white and South Asian employees. (*Id*. ¶ 93). Moreover, of the sixteen employees promoted at Taconic between 2005

---

[1] Plaintiff applied for the positions of Office Assistant 2 (Store/Mail), Secretary 1, and (Agency) Program Aide at Bedford Hills Correctional Facility more than once. (SAC at ¶¶ 27-41, 57; 55-65, 88; 67, 89).
[2] Plaintiff asserts she was not selected for an "Agency Program Aide" or "Program Aide" position at Bedford hills Correctional Facility but does not assert the race of the individuals who did obtain those positions. (*See* SAC ¶¶ 67-68, 89-95).

2

and 2016, fourteen were of white or South Asian descent. (*Id*. ¶ 95). White and South Asian employees were promoted despite lesser scores on the Civil Service examinations and without seniority compared to African American employees. (*Id*. ¶ 105).

Plaintiff further asserts she was denied promotions for "about a decade." (*Id*. ¶ 109). She also states that co-workers would comment on her many applications for promotions and indicate that the Albany DOCCS could prevent officers from receiving promotions. (*Id*. ¶ 106, 109). Plaintiff also recounts three promotions received by a white employee who began working at Taconic "one or at most two years prior to Plaintiff." (*Id*. ¶¶ 96-103).

On August 3, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id*. p.6, ¶ 25). On October 27, 2016, Plaintiff was promoted to an Office Assistant 2 position at Taconic. (*Id.* at ¶ 75.). Plaintiff received a notice of right to sue from the EEOC on August 21, 2017. (*Id.* at ¶ 25.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on November 13, 2017 against DOCCS, Taconic, the New York State Department of Civil Service (NYSDCS), and the Civil Service Employees Association, Inc. ("CSEA, Inc."). (ECF. No. 1). The initial defendants filed their respective motions to dismiss,[3] which the Court granted on March 20, 2019 (ECF No. 71). On February 5, 2020, the Second Circuit Court of Appeals issued a Summary Order vacating the Court's March 27, 2019 judgment to the extent it denied Plaintiff leave replead her Title VII claims against DOCCS. *See Dimps v. Taconic Correctional Facility*, 802 Fed. App'x 601 (2d Cir. 2020); (*see also* ECF No. 76). The Court

---

[3] CSEA, Inc. filed a motion to dismiss on June 12, 2018 (ECF No. 22); DOCCS and Taconic filed a motion to dismiss on September 10, 2018 (ECF No. 49); NYSDCS filed a motion to dismiss on September 10, 2018 (ECF No. 56).

received the Plaintiff's SAC on May 5, 2023 (ECF. No. 96). The parties submitted a fully briefed motion to dismiss on November 13, 2023, consisting of: (1) Defendant's (a) Motion to Dismiss in part (ECF No. 114); (b) Memorandum of Law in Support of Motion to Dismiss ("Def. Mem", ECF No. 115); (c) Reply in Support of Motion to Dismiss (ECF No. 117); and (2) Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss (ECF No. 116). Plaintiff also filed, without the Court's leave, a Sur-Reply in Opposition to the Defendant's Motion to Dismiss on November 27, 2023. (ECF No. 120).

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether a complaint states a claim upon which relief can be granted, the court "begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown that the pleader is entitled to relief. *Id.*

However, *pro se* complaints are held to less stringent standards than those drafted by lawyers. *Thomas v. Westchester County*, 2013 WL 3357171 (S.D.N.Y. July 3, 2013). Furthermore, a *pro se* party's pleadings should be read, "to raise the strongest arguments that they suggest . . . ." *Id.* at 2 (quoting *Kevilly v. New York*, 410 Fed. App'x 371, 374 (2d Cir. 2010)

(summary order) (internal quotations omitted). Regardless, recitals of the elements of a cause of action with conclusory statements are not sufficient. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## DISCUSSION

Plaintiff brings all of her claims under Title VII, alleging racial discrimination, the creation of a hostile work environment, and unlawful retaliation. (SAC pp.3, 5). Defendant only seeks to dismiss her retaliation and hostile work environment claims (Def. Mem, p.1).

### A. Hostile Work Environment

To state a hostile work environment claim, Plaintiff must allege that Defendant's conduct (1) was "objectively severe or pervasive," (2) created an environment that was "subjectively perceived as hostile or abusive," and (3) created such an environment "because of" the plaintiff's race. *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp.3d 763, 780 (S.D.N.Y. 2019). To survive a motion to dismiss, a complaint alleging hostile work environment must demonstrate: "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d. Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The analysis consists of objective and subjective prongs: "the misconduct must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* at 374 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Additionally, for incidents to be deemed pervasive, they must be "sufficiently continuous and concerted . . . ." *Alfano*, 294 F.3d at 374.

"Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id*. Finally, "whether a work environment is 'hostile' or 'abusive' can be determined by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is . . . threatening or humiliating. . . and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23. A court may also consider, among the totality of the circumstances, the conduct's effect on the employee's psychological well-being. *Id.*

Plaintiff fails to state a hostile work environment claim. Plaintiff contends that the Defendant created a hostile work environment by not promoting African Americans and Hispanics, further nothing this failure was "severe and pervasive to change [P]laintiff's career, terms and conditions of [her] employment." (SAC ¶ 108). Plaintiff further contends that Taconic's and DOCCS's failure to promote Plaintiff and other African Americans "like they would Caucasians and South Asian[-]descen[ded] racial groups due to race and color was severe and/or pervasive to create a work environment that any A[frican] A[merican] and . . . Hispanics would consider intimidating, hostile and . . . abusive." (*Id.*) According to Plaintiff, the failure to promote her led co-workers to comment, "[h]ow many times have you tried a promotion and did not get it?" and "[i]f Albany [DOCCS office] doesn't want you to get a promotion, then you're not going to get one." (*Id*). First, it is not abundantly clear these comments, the only two referenced in the SAC, are hostile in nature, as, notably, these comments do not contain any overt racial component. Even construing them as such, two isolated comments do not meet an objective "threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374 (citing *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)). Further, Plaintiff makes no claim as to how such comments unreasonably interfered with her work performance or how these

comments affected her. While comments need not push her to a nervous breakdown, "[a] discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 22. Here, Plaintiff makes no allegations that her performance suffered as a result her these comments or her repeated denials of new positions.

Moreover, the Court agrees with Defendant that Plaintiff conflates the adverse employment actions underpinning her racial discrimination claim with a hostile work environment claim. (*See* Def. Mem. at pp.1, 8). Plaintiff's primary contention seems to revolve around her claims of racially disparate promotion practices. A racial discrimination claim cannot be given the dress of a hostile work environment claim and survive a motion to dismiss. *See Singa v. Corizon Health, Inc.*, 17-cv-4482, 2018 WL 324884, at *3 (E.D.N.Y. Jan. 8, 2018) (dismissing a hostile work environment claim as duplicative of the plaintiff's disparate treatment claim).

Consequently, Plaintiff's hostile work environment claims must be dismissed.

**B. Retaliation**

"Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII . . . ." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). At the motion to dismiss stage, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018). Under the *McDonnell Douglas* test, a plaintiff

establishes a *prima facie* case of retaliation by alleging "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2005) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001)).

Accordingly, for a retaliation claim to survive a motion to dismiss, the complaint must plausibly allege that: (1) defendants took an adverse employment action against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega,*, 801 F.3d at 90. "A plaintiff's burden at this prima facie stage is *de minimis*." *Kirkland-Hudson v. Mount Vernon City School District*, 665 F. Supp.3d 412, 459 (S.D.N.Y. 2023) (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)).

In the context of a Title VII retaliation claim, an adverse employment action is "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Kirkland-Hudson*, 665 F.Supp.3d at 459 (citation omitted). Accordingly, "an action need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010).[4]

To sufficiently plead causation, a plaintiff must "plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90-91). A plaintiff is not required to show that retaliation was the sole cause of the employer's action, "but only that the adverse action would not have occurred in the absence of

---

[4] Though *Fincher* involves a claim brought under 42 U.S.C. § 1981, the analyses for both that statute and Title VII are identical. *See Fincher*, 604 F.3d at 720.

the retaliatory motive." *Id.* It is possible for causation to be shown "by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id.*; *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273–274 (2001).

For her retaliation claims, Plaintiff alleges that she was (1) "retaliated against from the beginning of my employment . . . until the end of my employment," and (2) then "after my retirement" with "the issuing of a payroll check in 2021"; as well as (3) by "defendants . . . telling me that [I] was hired to be a Switchboard Operator after [I] was hired, "despite correspondence indicat[ing] that plaintiff was a Clerk 1; and (4) "Plaintiff was denied promotions which expended to around or about decade." (SAC at ¶ 109).

Defendant has correctly asserted that nowhere does Plaintiff allege that she engaged in any form of protected activity or that anyone in management was aware of the protected activity. (Def. Mem., p.6). Again, Plaintiff appears to be relying on elements of her racial discrimination claim to underpin a separate retaliation cause of action. What's more, each of her allegations are plainly conclusory.

Taken most liberally, it appears Plaintiff argues that her multiple applications for advance constitute a protected activity. Even assuming, *arguendo*, such applications constitute a protected activity, Plaintiff's claim fails. It cannot be that a mere application for a new post, if denied, rises to the level of a retaliation claim. Plaintiff is required to show more to establish but-for causation, failing to do so here.

Consequentially, the Plaintiff's retaliation claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendant's partial motion to dismiss is GRANTED and Plaintiff's claims of hostile work environment and retaliation brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* are dismissed with prejudice. Defendants are directed to file an answer on or before April 24, 2024.

The parties are also directed to submit a Case Management Plan (attached) on or before May 13, 2024.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 114. The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at the address listed on ECF and to show service on the docket.

Dated: April 3, 2024  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge